# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA DE LA CRUZ,            ) | 1:08cv0782 DLB |
| ) | |
| ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff,     ) | SOCIAL SECURITY COMPLAINT |
| ) | |
| v.            ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security,        ) | |
| ) | |
| ) | |
| Defendant.    ) | |
| _____ ) | |

## **BACKGROUND**

Plaintiff Jessica De La Cruz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 7, 2008, the action was reassigned to the Honorable Gary S. Austin. The action was reassigned to the Honorable Dennis L. Beck on December 24, 2008.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her initial application on December 22, 2004, alleging disability since May 2, 2001, due to carpal tunnel syndrome ("CTS"), wrist strain, lumbar radiculopathy and spine strain. AR 66-68, 72-79. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 45, 60-64, 52-57. ALJ Christopher Larsen held a hearing on November 14, 2007, and issued an order denying benefits on November 27, 2007. AR 307-359, 9-19. On April 25, 2008, the Appeals Council denied review. AR 4-6.

Hearing Testimony

ALJ Larsen held a hearing on November 14, 2007, in Stockton, California. Plaintiff appeared with her attorney, Melissa Proudian. Vocational expert ("VE") Judith Najarian also appeared and testified. AR 307.

Plaintiff testified that she was 49 years old at the time of the hearing. She was 5'3" and weighed about 175 pounds. AR 314. Her weight was 10 to 15 pounds above normal because she has not been able to be physically active. AR 315. Plaintiff lived with her mother and two daughters. AR 316. She has not renewed her driver's license because she has a ticket, though she drives every day. AR 317. She tries to avoid driving because of her physical problems. AR 318.

Plaintiff completed the eleventh grade and had vocational training in property management after a workers' compensation claim. AR 319. Although she applied for property management positions, she never received any responses. AR 319. At the time, Plaintiff thought she could perform the position. AR 350. She did not believe that she could perform the position now, though, because of her hands and inability to bend down much. AR 320. Plaintiff last worked in May 2001 at a janitorial service and stopped after getting hurt on the job. AR 321. She was in that position for one year and was not working prior to that. AR 324.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she could not work because of her back, hands and legs. She has CTS in her left hand and has difficulty twisting, gripping, grasping, reaching overhead and opening and closing the hand. AR 327, 328, 333. She did not think she could lift more than five pounds with the left hand and thought that she could use it continuously for maybe 30 minutes before getting muscle spasms. AR 329. She had surgery on the left hand in September 2002 but her problems persisted. Plaintiff takes pain medication, which causes dizziness and lightheadedness. AR 331. The medication helps but does not take away the pain completely. She does home exercises and uses a TENS unit about three times a day for half an hour each time. AR 332.

Plaintiff has the same problems in her right hand. She had surgery in 1995, but it did not help all the symptoms. AR 334. She thought she could use her right hand continuously for about 45 minutes. AR 335. She does not use the TENS unit for her right hand and is not undergoing treatment. AR 336.

As for her back, Plaintiff testified that she has pain in her lower back all the time. She uses the TENS unit, takes pain medication and rests four or five times a day for about an hour each time. AR 337. She has difficulty sitting in a chair and thought she could sit for about 20 minutes maximum before needing to get up and stand for half an hour. AR 338-339. She thought she could walk for about 15 minutes. Plaintiff also has muscle spasms in her back and legs about three or four times a day, lasting for about 20 minutes each time. AR 344. Her doctor has offered her surgery but she has refused because she is scared. AR 346.

Plaintiff does things around the house like cooking and dishes, but often needs to stop after 15-20 minutes and then start again. AR 339. She cooks many meals a day but sometimes has trouble gripping and grasping. AR 340. She though she could cut vegetables with her right hand for three or four minutes before her hand would cramp up. Her mother or daughters often finish the task. AR 341.

Plaintiff does not have problems sleeping and is able to dress herself and take care of her personal needs. She has trouble picking things up off the ground, bending over and kneeling. AR 342. She can open doorknobs and button her clothes. AR 343.

When questioned by the ALJ, Plaintiff admitted that her purse weighed more than five pounds, but explained that she kept it on her shoulder. AR 347.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person could lift and carry twenty pounds occasionally, ten pounds frequently, stand and walk a total of six hours and sit for a total of six hours. This person could occasionally climb, balance, stoop, kneel, crouch, crawl, finger, handle and reach overhead. The VE testified that this person could not perform Plaintiff's past relevant work, but could perform the positions of usher and school bus monitor AR 354-355.

For the second hypothetical, the ALJ asked the VE to assume that this person had the additional requirement of needing to take unscheduled breaks during the day, in addition to the customary breaks, totaling about an hour per day. The VE testified that this person could not perform any jobs. AR 356.

Assuming the same limitations in the first hypothetical except a lifting limitation to under ten pounds, the VE testified that this would prohibit work. AR 356.

The VE testified that her testimony was consistent with the Dictionary of Occupational Titles. AR 357.

Medical Record

A February 2001 nerve conduction study showed median neuropathy in Plaintiff's left wrist. AR 198.

Plaintiff saw Elroy D. Brandt, M.D., on March 15, 2001, for evaluation of her left CTS. Based on her history and nerve conduction study, as well as his physical examination, Dr. Brandt recommended a left carpal tunnel release. AR 194-195.

Plaintiff began treating with neurologist Sanjay J. Chauhan, M.D., on April 26, 2001. She complained of left wrist pain and lower and mid back pain resulting from a work injury. Left wrist extension and grip strength was decreased due to pain, as was sensation to light touch and pinprick. Gait was normal. Range of motion in her lumbar spine was 80 percent of normal, except flexion was 100 percent of normal. Straight leg raising was negative. Both hands and wrists had full range of motion, though there was slight to moderate tenderness of the left wrist.

Phalen's sign was positive on the left and Finkelstein's test was slightly to moderately positive on the left. Dr. Chauhan diagnosed left wrist strain with left CTS and lumbar strain, rule out lumbar radiculitis or disc herniation. As to her disability status, Dr. Chauhan indicated that Plaintiff was to continue her regular work duties. AR 181-186.

A nerve conduction study performed on April 26, 2001, showed moderate left CTS, and mild right CTS, asymptomatic. AR 190.

Treatment notes from Dr. Chauhan dated June 27, 2001, describe Plaintiff's symptoms as the same, with complaints of increased pain in her lower back. Her examination was the "same." AR 177.

On July 3, 2001, Frank L. Cantrell, M.D., examined Plaintiff in connection with her workers' compensation claim. On examination, Plaintiff had mild tenderness of her supple lumbosacral paraspinal musculature. She had positive Tinel's sign over the bilateral median nerves at the level of the wrist, as well as induration and tenderness of her right proximal flexor forearm musculature. She had a full range of motion in her upper limbs. Dr. Cantrell diagnosed left forearm pain due to flexor myofascial pain, numbness of the left hand, probably due to CTS, low back pain due to straining injury, left wrist contusion, probably without residual and degenerative joint disease. He recommended that Plaintiff be in a "better" exercise and stretching program and thought she could benefit from left CTS release. He believed that her left CTS was work related. AR 102-105.

A nerve conduction study performed the same day was abnormal in the left median nerve and was compatible with left CTS. AR 106.

Plaintiff received physical therapy for her back in July and August 2001. AR 174-175.

Plaintiff underwent an MRI of her lumbar spine on September 1, 2001. The test revealed mild central spinal stenosis at L3-4 and mild to moderate central stenosis at L5-S1 due to congenital shortening of the pedicles and mild facet arthropathy. There were also mild right sided bulges seen at L5-S1. AR 171-172.

On September 25, 2001, Dr. Brandt performed a left carpal tunnel release. AR 169-170.

On October 18, 2001, Plaintiff returned to Dr. Brandt. Upon examination, Plaintiff had mild swelling with some erythema in her left palm. She was given antibiotics and told to soak and massage her hand. AR 168.

Plaintiff began a two week course of physical therapy on November 1, 2001, to increase strength, range of motion and grip function in her left wrist. Although she noticed significant improvement in sensation, she had mild restriction in range of motion and grip strength due to pain. AR 163.

A treatment note from Dr. Chauhan dated November 7, 2001, indicated that Plaintiff's symptoms were the same.

A nerve conduction study performed on November 12, 2001, showed slight to moderate CTS in the left and slight CTS on the right. AR 156-158.

On January 31, 2002, Dr. Chauhan completed a report of disability status. He opined that Plaintiff was physically able to participate in vocational rehabilitation. She could not, however, perform repetitive work or repetitive forceful gripping with her left hand, could not perform repetitive bending/stooping, could not lift, push or pull over ten pounds and could not perform prolonged standing, walking or sitting. AR 142.

Dr. Chauhan wrote a report in connection with Plaintiff's workers' compensation claim on February 27, 2002. He opined that Plaintiff was permanent and stationary. Her complaints continued to revolve around pain in her left wrist and mid and lower back. Her neurological examination was normal, although motor strength and grip strength were decreased in the left wrist. She had decreased sensation in the index finder to light touch on the left side as compared to the right. Her gait was normal. Plaintiff had slight muscle spasm bilaterally in her lumbar spine and range of motion on extension was 80 percent. Straight leg raising was negative. Phalen's sign was positive on the left hand, causing parethesia of the first through fourth digits for ten seconds. He diagnosed (1) status post left carpal tunnel release surgery with residual symptomatology with left wrist tendonistis; and (2) lumbar strain with bilateral radicular symptoms with an abnormal MRI scan of the lumbar spine. He opined that Plaintiff should

avoid repetitive work with the left hand and wrist, as well as repetitive, forceful gripping with the left hand and wrist. She also had to avoid heavy use of the left upper extremity. Dr. Chauhan believed that Plaintiff's future medical care would consist of pain medication, periodic physical therapy and repeat carpal tunnel release on the left side. She may need epidural injections if the pain in her lumbar spine becomes intense, and may need surgery if her condition deteriorates. AR 146-152.

On September 16, 2002, Plaintiff saw Brendan V. McAdams, M.D., for an orthopedic evaluation in connection with her workers' compensation claim. Plaintiff explained that in December 2000, a gate fell off its hinge and landed on top of her while she was at work. Her chief complaint was lower back pain that increases with sitting and bending, as well as occasional loss of control of her left leg. Plaintiff reported that her left wrist was "markedly better." On examination, Plaintiff showed no signs of difficulty walking or sitting. Her examination was normal, although Plaintiff had some mild discomfort to direct pressure of the lumbosacral junction and had some difficulty in assuming the prone position and returning to a supine position. Based on his examination and review of the medical records, Dr. McAdams opined that Plaintiff suffered an injury to the left wrist as a result of the occupational injury in December 2000. At the same time, she suffered a chronic lumbosacral strain and remains symptomatic. The factors of disability were mostly subjective in nature. AR 107-111.

Dr. McAdams opined that Plaintiff could not perform heavy lifting or repeated bending or stooping. He found no reason to restrict activities using her upper extremities. He believed that Plaintiff was a qualified worker because she could not return to her janitorial work. AR 111-112.

On February 13, 2003, Dr. McAdams completed a supplemental report. He explained that future medical care would be focused on Plaintiff's lower back and would consist of non-invasive, conservative treatment with anti-inflammatory medication and analgesics on an intermittent basis. There was no evidence that surgery would be required. AR 144-145.

Plaintiff returned to Dr. Chauhan on February 27, 2003, and complained of pain in her left leg for the past three weeks. She had decreased range of motion in her lumbar spine and

positive straight leg rasing on the left at 70 degrees.  He diagnosed left CTS, left wrist strain/sprain, and left lumbar radiculopathy with left sciatica symptoms.  AR 143.

In August 2003, Dr. Chauhan noted that Plaintiff was "still claiming same pain," although her back pain had worsened.  Her medications were refilled.  AR 140.

Plaintiff underwent an MRI of her lumbar spine in September 2003.  There was no significant change from the earlier September 2001 study, showing mild central stenosis at L3-4 and L4-5, presumably secondary to congenital shortening of the pedicles and minimal facet disease.  AR 138-139.

On November 17, 2003, Donald Ansel, M.D., performed a Qualified Medical Examination.  Plaintiff complained of constant low back pain, leg pain and trouble with her left upper extremity.  On examination, she had tenderness without spasm in the paralumbar muscles at about the L4-5 level with no midline tenderness.  Supine straight leg raising produced low back pain at 30 degrees on the right and 35 degrees on the left.  Her handgrips were "rather mediocre."  Phalen testing was positive bilaterally.  AR 117-130.

After reviewing Plaintiff's medical records, Dr. Ansel explained that Plaintiff was injured at work in December 2000, but continued to work until May 2001, when she was terminated.  AR 131.  He believed she would be precluded from repetitive firm gripping or grasping and from working in a situation where there could be any jarring or local pressure on the left wrist.  Dr. Adams estimated the loss of handgrip on the left wrist as probably no greater than 10 percent.  AR 133.

On December 19, 2003, Plaintiff complained of pain off and on and increasing muscle spasms at night.  AR 116.  She was instructed to continue her medications and home exercises.  AR 116.

On May 8, 2004, Plaintiff saw Dr. Chauhan and reported that everything was the same and that she was still having some swelling in her hands.  He instructed her to continue her medication and home exercises.  AR 115.

In an August 2004 treatment note, Plaintiff complained of back spasms. Dr. Chauhan described Plaintiff's examination as the "same." He refilled Plaintiff's medications and instructed her to continue stretching and exercising. AR 114.

On August 30, 2004, Dr. Chauhan reported that Plaintiff could perform modified/light work, without lifting more than 10 pounds and without performing repetitive work or forceful gripping with her left hand. She was also to avoid prolonged standing, sitting or walking. AR 267.

A March 25, 2005, MRI of Plaintiff's lumbar spine revealed a 4-5 mm posterior disc bulge without evidence of canal stenosis or neural foraminal narrowing at L3-L4, mild left neural foraminal narrowing secondary to 1-2 mm posterior disc bulge facet joint hypertrophy at L4-L5, and mild to moderate right and minimal to moderate left neural foraminal narrowing secondary to 2-3 mm posterior disc bulge and facet joint hypertrophy at L5-S1. AR 261-263.

On April 4, 2005, Plaintiff saw Benjamin Chang, M.D., for a consultive neurological examination. Plaintiff complained of chronic low back pain and bilateral CTS. On physical examination, grip strength in the left hand was decreased and range of motion in her back was less than full, with mild localized tenderness over the lower lumbar spine and minimal spasm. Straight leg raising was negative and no radicular symptoms were noted. Range of motion in both wrists was full. Tinel's sign was positive bilaterally. Motor strength was 5/5 in all four extremities, but sensation was somewhat diminished to light touch and pinprick in her bilateral hands. Dr. Chang opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours and sit without restriction. She could occasionally climb, stoop, kneel, balance, crouch, and crawl. Plaintiff could occasionally reach, feel, finger and perform gross handling with her hands. AR 200-203.

On April 14, 2005, Plaintiff underwent electrodiagnostic studies that revealed slight right L5 radiculopahty. AR 256.

Dr. Chauhan prepared a progress report dated April 27, 2005. Plaintiff reported that her back pain continued at a high level, but not as bad as in March 2005. She felt that she could tolerate the pain. Plaintiff had decreased motor and grip strength in her left wrist, as well as

decreased motor strength in her right hip and foot due to back pain. She continued to have decreased sensation on her left hand. Plaintiff could heel and toe walk, but she complained of pain in the low back and right leg. There was slight muscle spasm bilaterally in her lumbar spine and decreased range of motion. Straight leg raising was positive on the right. Phalen's sign was positive on the left. He noted that Plaintiff had incurred "spontaneous worsening" of her lumbar pain and recommended another MRI. Plaintiff was not interested in invasive treatment such as epidural injections or neurological consultation. She had improved since March 2005 and felt that she was back to her baseline pain level. Dr. Chauhan believed she should continue conservative care. AR 249-255.

On May 20, 2005, State Agency physician Ernest Wong, M.D., completed a Physical Residual Functional Capacity Assessment. He opined that Plaintiff could occasionally lift 20 pounds, 10 pounds frequently, could stand/walk about six hours and could sit for about six hours. She was unlimited in pushing/pulling and had no postural limitations. She was limited in handling and feeling. This assessment was affirmed on September 29, 2005. AR 204-213.

Treatment notes from Dr. Chauhan from July, October and November 2005 showed that Plaintiff complained of increased numbness in her legs. Her deep tendon reflexes were normal, but sensation was decreased in her left leg. AR 243-245.

A December 22, 2005, MRI of Plaintiff's lumbar spine showed minimal to mild bilateral neural foraminal narrowing secondary to a 4 mm posterior disc bulge and facet joint hypertrophy at L3-L4, mild bilateral foraminal narrowing secondary to a 3 mm posterior disc bulge and facet joint hypertrophy at L4-L5, and mild bilateral foraminal narrowing secondary to a 3 mm posterior disc bulge and facet joint hypertrophy at L5-S1. AR 246-248.

Dr. Chauhan examined Plaintiff on January 21, 2006. He reported that Plaintiff's low back pain had continued, with radiation to the left leg. She also continued to complain of left wrist/hand pain that worsened with repetitive activities and cold weather. Motor and grip strength in her left wrist were decreased, as was sensation in the finger on the left side. Her gait was normal, though slow due to low back pain. Range of motion in her back was decreased and straight leg raising was positive on the left. Her left wrist showed mildly positive Phalen's sign.

He diagnosed lumbar strain with left lumbar radiculopahty, exacerbation requiring repeat MRI, and left wrist tendonistis with left CTS, stable. He instructed Plaintiff to continue her home exercises and medications, though she was told not to take the pain medication continuously to prevent long-term side effects. He also recommended that Plaintiff be provided with a neoprene wrist brace. AR 235-238.

_____Treatment records from April, July and October 2006 show that Plaintiff complained of increased leg, back and wrist pain. Dr. Chauhan documented a slow gait and recommended that Plaintiff continue with her home exercise program and medications. AR 231-233.

_____Dr. Chauhan completed a medical report for the welfare to work program on May 2, 2006. He opined that Plaintiff could perform limited, full-time work, with partial capacity to lift up to ten pounds, full capacity to continuously stand and sit, and partial capacity to perform overhead work and squatting/kneeling. He further opined that Plaintiff could perform sedentary/clerical work. AR 287.

_____On January 10, 2007, Dr. Chauhan noted that Plaintiff continued to complain of low back pain, as well as sharp pain in her legs. She also complained that her left wrist/hand constantly ached. One examination, she had decreased range of motion in her lumbar spine and positive straight leg raising on the left. AR 230.

_____Dr. Chauhan saw Plaintiff again on July 2, 2007. She complained of low back pain, mostly on the left side, with radiation to her lower extremities, as well as left hand/wrist pain. Motor and grip strength in her left wrist were decreased, as was sensation in the finger on the left side. Her gait was normal, though she walked with a slightly flexed forward posture due to low back pain. Range of motion in her back was decreased and straight leg raising was mildly positive. There was slight to moderate paralumbar muscle spasm. Phalen's sign was positive on the left. He instructed Plaintiff to continue using the muscle stimulator/TENS unit and her medications, and to continue her home exercise and stretching. Due to her continued symptoms, Dr. Chauhan opined that Plaintiff had permanent restrictions of no lifting, pushing or pulling more than five pounds, no repetitive bending of the back, no repetitive above-shoulder level

work with both shoulders, no repetitive forceful work with both hands and no prolonged standing and walking.  AR 268-271.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of CTS, status post left carpal tunnel release and lumbar degenerative disc disease.  AR 14.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform limited light work.  AR 15.  Plaintiff could not perform her past relevant work, but could perform a significant number of jobs in the national economy.  AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (CTS, status post left carpal tunnel release and lumbar degenerative disc disease) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) retains the RFC to perform a significant number of light jobs.  AR 14-19.

Here, Plaintiff argues that the ALJ (1) could not rely on the identification of part-time work at step five; (2) did not properly assess Dr. Chauhan's opinions; and (3) did not properly assess her testimony.

## DISCUSSION

A.    Number of Jobs

Plaintiff first argues that the ALJ erred at step five by accepting the VE's identification of school bus monitor as part of his analysis.

At step five of the sequential evaluation process, the Commissioner bears the burden of demonstrating that Plaintiff can perform "other work" that exists in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).  To meet this burden, the ALJ relied in part on the testimony of the VE to identify positions available to Plaintiff.  At the hearing, the VE testified that a person with Plaintiff's RFC could perform the positions of usher

(2,756 positions in California and nine times that amount nationally) and school bus monitor (1,021 positions in California and nine times that amount nationally). AR 355. The ALJ indicated that the school bus monitor position was typically performed as part-time work. AR 355.

In his decision, the ALJ determined that Plaintiff could perform a significant number of positions in the national economy, explaining that she could:

> perform such unskilled jobs as usher, DOT code 344.677-014, light exertion, with 2,756 such jobs in California; and school bus monitor, DOT code 372.667-042, with 1,021 such jobs in California. Mrs. Najarian testified there are also about nine times as many of these jobs nationwide as in California alone.

AR 18.

Plaintiff's argument is two-fold. She argues first that the ALJ should not have included the position of school-bus monitor in determining whether work exists in significant numbers because it was typically a part-time position. In support of her argument, she contends that the ALJ must have found her able to perform work on a "regular and continuing basis." Pointing to 96-8p, which deals with the RFC analysis, Plaintiff argues that "regular and continuing" means "8 hours a day, for 5 days a week, or an equivalent work schedule." The regulations relating to step five, however, only specify "other work." 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).

While it is not necessarily clear in the Ninth Circuit whether part-time work constitutes "other work" at step five, case law in other circuits as well as Defendant's failure to address the issue, suggest that the identification of part-time work as "other work" at step five does not meet the Commissioner's burden. *See eg., Bladow v. Apfel*, 205 F.3d 356, 359-60 (8th Cir.2000) (noting that the Commissioner interprets Social Security Ruling 96-8p to require at step five the ability to work on a "regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule."); *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999) (describing the Commissioner's stance as "only an ability to do full-time work will prevent a finding of disabled at step five."). The identification and inclusion of the typically part-time position of school bus monitor was therefore improper.

14

To determine if the error was harmless, the Court must look at the remainder of the step five analysis. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). In addition to the improper school bus monitor position, the ALJ identified the position of usher, of which there are 2,756 jobs in California and nine times that amount nationally. Plaintiff argues that this is insufficient to carry his burden because "2,756 jobs scattered across the entire State of California" is not a significant number of jobs. Opening Brief, at 9.

Pursuant to the regulations, work exists "in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country, and one is disabled if significant work exists regardless of whether such work exists in the immediate area in which the person lives, whether a specific job vacancy exists for the person, or whether the person would be hired if he applied for work. 42 U.S.C. § 423(d)(2), 1382c(3); 20 C.F.R. §§ 404.1566(b), 416.966(b). The regulations further explain that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b).

Here, the ALJ identified 2,756 positions in the State of California. While California may be a large state, there is nothing to suggest that the positions were either isolated or existed in relatively few locations. For example, in *Barrett v. Barnhart*, 368 F.3d 691 (7th Cir. 2004), the Seventh Circuit explained that the identification of the test of claimant's entitlement to benefits as whether she was so disabled that there were no jobs "in reasonable proximity to where she lived," comported with the statutory standard. The principle significance of the statutory language is to prevent SSA from denying benefits on the basis of isolated jobs existing only in very limited numbers in relatively few locations outside claimant's region. *Id.* at 691. The court continued, "[i]n our experience, and, it seems, in that of other circuits as well, the vocations experts who testify. . .concerning availability of jobs that the applicant has the physical ability to perform almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." *Id.* This, the court found, is a proper

interpretation of the statutory standard. *Id.; see also Trimiar v. Sullivan*, 966 F.2d 1326, 1329-1332 (10th Cir.1992) (finding no error in the ALJ's finding that 650 to 900 jobs in the state of Oklahoma constituted a significant number); *Gonzalez v. Sec'y of Health and Human Serv.*, 773 F.Supp. 994, 996 (W.D.Mich.,1991) (citing an unpublished Sixth Circuit case as follows, "We believe it is clear that the term 'region' is flexible and that the Secretary did not err in considering the number of jobs existing in the entire State of Michigan. . . The fact that the statute speaks in terms of work existing in the national economy and does not restrict the Secretary to consideration of work that exists in the immediate area of a claimant's residence gives the Secretary sufficient latitude to treat an entire state as the region to be considered.")

Therefore, Plaintiff's argument that 2,756 positions spread across California is not a sufficient number fails in light of the interpretation of the governing statute. The Dictionary of Occupations Titles defines usher, code 344.677-014, as an individual who "[a]ssists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display." Such positions would likely be available at every movie theater and entertainment venue throughout the State of California, negating a conclusion that the position was either isolated or existed in very few locations.

Insofar as Plaintiff suggests that the ALJ erred because he did not specifically find that 2,756 jobs was a significant number, she is mistaken. The ALJ did not so find because he based his overall finding on both positions, one of which this Court has now determined to be improper. The Court is permitted, however, to make such conclusions in its harmless error discussion, which inevitably includes analyses that were not undertaken by the ALJ.

Accordingly, the Court finds that the ALJ's error in identifying the school bus monitor position was harmless. When considering the remaining usher position, the ALJ's conclusion was free of legal error and supported by substantial evidence.

B.     Plaintiff's Treating Physician

Plaintiff next argues that the ALJ improperly analyzed Dr. Chauhan's assessments. Specifically, she contends that the ALJ ignored certain aspects of Dr. Chauhan's August 2004 assessment and improperly rejected his opinions after March 2005.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579

1  (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not

2  herself considered, *see Andrews*, 53 F.3d at 1041.

3          Here, the ALJ found that Plaintiff retained the RFC for limited light work.  Specifically,

4  she could occasionally lift up to 20 pounds, 10 pounds frequently, and could sit, stand and walk

5  for six hours out of an eight hour day, with usual breaks.  Plaintiff could occasionally climb,

6  balance, stoop, kneel, crouch, crawl, reach overhead, feel, finger and handle.  AR 15.  In making

7  this finding, the ALJ gave "very substantial weight" to the April 2005 opinion of Dr. Chang, the

8  consultive examiner.  Indeed, the ALJ adopted all of Dr. Chang's limitations, though he found

9  Plaintiff slightly more limited in sitting than Dr. Chang.  The ALJ gave "substantial weight" to

10  Dr. Chauhan's February 2002 and August 2004 opinions and "weight" to the May 2005 opinion

11  of the State Agency physician.  As to Dr. Chaun's more restrictive May 2006 and July 2007

12  opinions, the ALJ gave them "little weight."  AR 15.

13          Plaintiff's argument focuses on the ALJ's rejection of Dr. Chauhan's lifting restrictions in

14  August 2004, May 2006 and July 2007, as well as his sitting, standing and walking limitations in

15  his August 2004 opinion.  In August 2004, Dr. Chauhan opined that Plaintiff could lift no more

16  than 10 pounds and could not perform prolonged standing, sitting or walking.  AR 267.  In May

17  2006, he limited Plaintiff to lifting no more than 10 pounds and by July 2007, he limited Plaintiff

18  to lifting no more than five pounds.  AR 268-271, 287.

19          In adopting the contradictory lifting limitations set forth by Dr. Chang, the ALJ adopted

20  the consultive examiner's opinion over that of Plaintiff's treating physician.  As discussed above,

21  in order to constitute substantial evidence to reject Dr. Chauhan's limitations, Dr. Chang's

22  opinions must have been based on independent clinical findings.

23          Here, Dr. Chang performed the same tests as Dr. Chauhan, with slightly different

24  findings.  For example, through April 2005, both Dr. Chang and Dr. Chauhan documented

25  decreased range of motion, tenderness and spasms in Plaintiff's lumbar spine.  AR 114, 143,

26  146-152, 200-203.  Both physicians also found that Plaintiff had chronic low back pain

27  problems.  Dr. Chang diagnosed Plaintiff with chronic low back pain likely due to mild spinal

28  stenosis.  AR 203.  Similarly, Dr. Chauhan diagnosed Plaintiff with a lumbar strain with

18

radicular symptoms. AR 143, 146-152. Given the similarity of the tests performed and the diagnoses, the Court cannot conclude that Dr. Chang's findings were based on independent clinical findings.

Moreover, the evidence shows that since Dr. Chang's April 2005, examination, Plaintiff's symptoms continually worsened through July 2007, when Dr. Chauhan imposed the more restrictive lifting limitations. For example, in July, October and November 2005, Plaintiff began experiencing decreased sensation, numbness and tingling in her left leg. AR 243-245. An MRI performed in December 2005 showed deterioration since the MRI performed in September 2001. AR 171-172, 247. In January 2006, Dr. Chauhan documented radiation of Plaintiff's back pain to the left leg, slow gait due to low back pain, decreased range of motion in her back and positive straight leg raising on the left. AR 235-238. In April, July and October 2006, Dr. Chauhan documented increased back pain and continued slow gait. AR 231-233. In January 2007, Dr. Chauhan noted that Plaintiff continued to complain of low back pain, as well as sharp pain in her legs, and on examination, she had decreased range of motion in her lumbar spine and positive straight leg raising on the left. AR 230. Finally, in July 2007, Plaintiff walked with a slightly flexed forward posture due to low back pain, range of motion was decreased, straight leg raising was mildly positive and there was slight to moderate paralumbar muscle spasm. Due to her continued symptoms, Dr. Chauhan opined that Plaintiff had permanent restrictions of no lifting, pushing or pulling more than five pounds, no repetitive bending of the back, no repetitive above-shoulder level work with both shoulders, no repetitive forceful work with both hands and no prolonged standing and walking. AR 268-271.

Based on this record, Dr. Chauhan's increased restrictions appear supported. Given the evidence of increased symptoms, Plaintiff's longstanding treatment history with Dr. Chauhan, and the importance of the treating physician's opinions as set forth in *Orn*, the Court finds that the ALJ erred by failing to accept Dr. Chauhan's more restrictive lifting limitations. The Court will discuss remand at the end of this order.

Contrary to Defendant's suggestions, lifting restrictions do not involve only upper extremities. Rather, as evident here, Plaintiff had back, leg, hand and wrist impairments, all of which can contribute to lifting restrictions.

As to the ALJ's rejection of Dr. Chauhan's May 2006 report for the Fresno County welfare to work program, the Court agrees that the report is somewhat inconsistent insofar as Dr. Chauhan finds that Plaintiff could perform sedentary work yet could stand without restriction. AR 16, 287. However, as Plaintiff contends, the inconsistency of this single report is not sufficient evidence to reject Dr. Chauhan's July 2007 restrictions, which are supported by the medical record.

Insofar as Plaintiff argues that the ALJ ignored Dr. Chauhan's August 2004 opinion that Plaintiff could not perform prolonged sitting, standing or walking, the ALJ reviewed the opinion in his review of the medical evidence. AR 15. In any event, this limitation is not necessarily inconsistent with the ALJ's RFC finding that Plaintiff could "sit, or stand and walk, for 6 hours in an 8-hour day, with the usual breaks." AR 15.

C.    Plaintiff's Credibility

Finally, Plaintiff contends that the ALJ erred in finding her not credible.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).* "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ set forth Plaintiff's testimony, in which she explained that she could not lift more than five pounds with either hand, has trouble gripping and grasping with her left hand, cannot perform overhead reaching with either arm, cannot sit, stand or walk for more than 30 minutes at a time, and can bend and stoop with difficulty. AR 16-17.

In analyzing her testimony, the ALJ first explained that while her impairments can produce some of the limitations she alleges, her statements about the intensity, persistence, and limiting effects of the symptoms are not entirely credible. AR 17. As to her testimony explaining the limited use of her left hand, the ALJ states that it is not supported by Dr. Chang's April 2005, consultive examination or Dr. Chauhan's examination findings. For example, although Plaintiff testified that she drops things all the time with her left hand, and has difficulty twisting, gripping, grasping, reaching overhead and opening and closing her left hand, Dr. Chang found that Plaintiff had "full 5/5 power" and full passive range of motion in her wrists. AR 200-203. Similarly, Dr. Chauhan found Plaintiff's wrists to be stable in April 2005. AR 251. AR 251. Dr. Chang did find decreased grip strength in the left hand, positive Tinel's sign bilaterally and somewhat diminished sensation to light touch and pinprick in her bilateral hands, but the ALJ was entitled to compare Plaintiff's testimony with the medical evidence and make a supported conclusion. The ALJ also recognized that Plaintiff's complaints had increased but notes that Dr. Chauhan's July 2007 records showed normal range in her left wrist and fingers and only mild tenderness over the surgical scar. AR 270. Moreover, the ALJ did give some credence to Plaintiff's testimony as he limited her hand use in the RFC.

Plaintiff testified that she has the same problems in her right hand.  AR 334.  She thought she could use her right hand continuously for about 45 minutes, but testified that she could cut up vegetables with her right hand for three or four minutes before her hand would cramp up.  AR 335, 341.  The ALJ again found that her testimony was contradicted by Dr. Chang and Dr. Chauhan's findings, described above.  AR 17.

In addition to citing the objective evidence, the ALJ also explained that Plaintiff's own testimony demonstrated that she could dress herself, perform self-care, cook three meals a day for herself and her family and drive daily.  AR 17.  The ALJ reasonably concluded that her abilities contradicted her testimony.  The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

As to Plaintiff's testimony that she could sit for about 20 minutes, stand for 30 minutes and walk for about 15 minutes, the ALJ explained that this testimony, too, was contradicted by her daily activities.  AR 17.  He also found that her testimony was not supported by the most recent treating opinions, when Dr. Chauhan found that Plaintiff could perform sedentary work and did not limit her abilities to walk, stand or sit.  AR 17, 287.

The ALJ next discussed Plaintiff's testimony that she was unable to lift more than five pounds.  When the ALJ questioned her testimony at the hearing, Plaintiff admitted that her purse weighed more than five pounds.  AR 347.  The ALJ reasoned that she was exaggerating, "Ms. De LaCruz testified she cannot lift more than 5 pounds, but admits her purse weights more than five pounds."  AR 17.  The Court agrees with Plaintiff that this is a tenuous conclusion, at best, because the ALJ did not have sufficient information to draw such a conclusion.  For example, her purse could have weighed just over five pounds, making it a distinction without a difference.  In light of the Court's earlier finding that the ALJ erred in rejecting Dr. Chauhan's lifting restrictions and this oversimplification, the Court finds that the ALJ's rejection of Plaintiff's credibility based on the lifting of her purse was not supported by substantial evidence.  However, because the ALJ's remaining analysis was supported and error free, the Court finds this error

harmless.  *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

Finally, the ALJ cited Plaintiff's "minimal work history" as detracting from her credibility.  AR 17.  *Light,* 119 F.3d at 792 (ALJ may consider claimant's work history in assessing credibility).  Indeed, the record shows that Plaintiff had no earnings for 8 of the 13 years prior to her alleged May 2, 2001, onset date.[3]  AR 65.  The evidence also shows that Plaintiff was terminated for reasons unrelated to being physically unable to do her job.  As set forth in a May 2003 qualified medical examination, Plaintiff was terminated on May 1, 2001, when she failed to report for an assignment after car trouble.  AR 131.  A July 3, 2001, medical report also notes that Plaintiff was terminated on May 1, 2001.  AR 102.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.2001) (ALJ can draw adverse inference from evidence the claimant stopped working for reasons other than allegedly disabling medical condition).

Moreover, the medical reports show that during the time Plaintiff alleges disability, she was either looking for work or was being retrained.  A November 2003 medical report state that after she was terminated in May 2001, Plaintiff called her employee to see if they wanted her back, even though she did not think she could carry the heavy bags of trash.  AR 131.  At that time, she was being retrained in property management.  AR 131.  A medical note from January 2006 states that Plaintiff was retrained in property management but could not find a job.  AR 237.  Similarly, Plaintiff indicated in her testimony that she was retrained in property management but could not find a position after applying to over 250 places.  AR 348.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).

The Court therefore finds that the ALJ's credibility analysis is supported by substantial evidence and free of legal error.

---

[3] In her reply, Plaintiff suggests that she did not work during this period because she was engaged in child rearing and faults the ALJ for not further inquiring into her reasons for not working.  Reply, at 7.  However, Plaintiff did not challenge the ALJ's minimal work finding in her opening brief and the Court will not entertain arguments raised for the first time in a reply brief.  The Court examines the ALJ's use of Plaintiff's work history in terms of analyzing the overall credibility determination.

D.    Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the ALJ should have credited Dr. Chauhan's lifting limitation to no more than five pounds. Sedentary work involves lifting no more than 10 pounds, which means that Plaintiff would be able to perform less than the full range of sedentary work. 20 C.F.R. § 404.1567; SSR 83-10. To determine the extent of erosion of the occupational base, VE testimony will be necessary. SSR 96-9p.[4] Accordingly, the Court finds that this action should be REMANDED for additional VE testimony, as the VE testimony provided to the ALJ was not based on a five pound lifting restriction.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

---

[4] The Medical Vocational Guidelines do not necessarily direct a finding of disabled.

1  further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

2  judgment in favor of Plaintiff Jessica De La Cruz and against Defendant Michael J. Astrue,

3  Commissioner of Social Security.

4

5          IT IS SO ORDERED.

6      **Dated:** __**May 27, 2009**__          _____**/s/ Dennis L. Beck**_____
                                              UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28